UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES KYLE MILLER,

       Plaintiff,

v.

       Case No. 15-cv-12984
       Hon. Matthew F. Leitman

KELLEY RYBICKI *et al*.,

       Defendants.

_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING WITHOUT PREJUDICE IN PART  MOTION FOR SUMMARY JUDGMENT (ECF #10)

## INTRODUCTION

In this action, Plaintiff James Kyle Miller ("Miller") alleges, among other things, that two deputies from the Jackson County Sheriff's Department, Defendants Kelley Rybicki ("Rybicki") and Jason Breining ("Breining"), violated his Fourth Amendment rights to be free from (a) arrest without probable cause and (b) excessive force.  Miller also alleges that Rybicki and Breining violated his due process rights.  In addition, Miller asserts a municipal liability claim against Defendants Jackson County Sheriff's Office (the "Sheriff's Office") and Jackson County.  Rybicki, Breining, the Sheriff's Office, and Jackson County (collectively, the "Jackson County Defendants") have now filed a motion to dismiss and/or for

1

summary judgment (the "Motion").[1]  (*See* ECF #10.)  For the reasons set forth below, the Motion is **GRANTED IN PART** and **DENIED WITHOUT PREJUDICE IN PART**.

## RELEVANT FACTUAL BACKGROUND

During the late evening on September 4, 2012, Miller and his cousin were at the Lost Shoe Tavern in Jackson County. (*See* Miller Affidavit at ¶3, ECF #12-1, Pg. ID 296.)  At that time, they become involved in a physical altercation with other patrons. (*See id.* at ¶¶ 4-9, Pg. ID 296-297.)  According to Miller, another patron bloodied him in the parking lot, and when the patron attempted to continue the assault inside the bar, Miller threw a glass "in the direction of [his] assailant." (*Id.* at ¶¶ 4-7, Pg. ID 296.)  At the conclusion of the altercation, Miller realized that he could not drive himself home because he could not locate his keys. (*See id.* at ¶10, Pg. ID 297.)  Miller then "left the bar on foot[] to walk home," walked "for quite a while in the woods," and finally "sat down next to a tree." (*Id.* at ¶11.)

Rybicki and Breining have submitted affidavits setting forth their version of events.  (*See* ECF ## 10-4, 10-5.)  According to the officers, the Sheriff's Office quickly learned of the altercation at the Lost Shoe Tavern and dispatched them to the scene.  (*See* Rybicki Aff. at ¶3, ECF #10-4, Pg. ID 239; Breining Aff. at ¶3,

---

[1] Miller also brings claims against Christopher Jacobson, Blackman Charter Township, and the Blackman Township Police Department.  These Defendants have not moved to dismiss the claims brought against them.

ECF #10-5, Pg. ID 243.)  Upon arriving, Rybicki entered the tavern, interviewed witnesses, and arrested one of the individuals believed to have participated in the altercation. (*See* Rybicki Aff. at ¶4, ECF #10-4, Pg. ID 239.)   Breining learned that one of the individuals involved in the altercation had left the tavern, and he went outside to see if he could locate that individual. (*See* Breining Aff. at ¶¶ 4-5, ECF #10-5, Pg. ID 243.)  At that point, Breining "saw a figure running on the edge of the bar's parking lot in a weedy area." (*Id.* at ¶5.)

While Rybicki remained behind at the Lost Shoe Tavern (*see* Rybicki Aff. at ¶5, ECF #10-4, Pg. ID 239), Breining summoned help in his effort to locate the fleeing individual.  Breining "requested that a canine unit from the Blackman Township Public Safety Department be sent to the scene to assist in tracking the subject." (*Id.* at ¶6.)  Shortly thereafter, Blackman Township Public Safety Officer Christopher Jacobson ("Jacobson" or "PSO Jacobson") arrived at the scene with his police dog, Zando. (*See id.* at ¶7.)  Breining "pointed PSO Jacobson in the direction [he] had seen the figure running on the edge of the parking lot," and Breining "followed PSO Jacobson and Zando as they tracked the subject." (*Id.* at ¶¶ 8-9, Pg. ID 243-244.)  As Breining and Jacobson tracked the subject, Breining says that he did not direct Zando's actions in any way; "PSO Jacobson was the only officer giving Zando commands during the track." (Breining Aff. at ¶10, ECF 10-5, Pg. ID 244.)

The Jackson County Defendants have submitted the in-car video/audio from Rybicki's vehicle on the night in question (*See* ECF ## 16-1, 17), and that recording adds important information to the version of events set forth in the officers' affidavits.  The recording indicates that Breining arrived on the scene first and Rybicki arrived second; that witnesses told Rybicki that Miller had fled after he attempted to commit an assault with a broken glass; and that Rybicki relayed the witnesses' accusations that Miller attempted to commit an assault with a broken glass to Breining.  The video establishes that all of these actions occurred *before* PSO Jacobson and Breining began searching for Miller with Zando.

Zando ultimately found the subject he was tracking – who turned out to be Miller.  Miller says that Zando approached him as he (Miller) was sitting quietly next to a tree to rest. (*See* Miller Aff. at ¶¶ 11-13, ECF #12-1, Pg. ID 297.)  Miller insists that Zando "came out of nowhere and latched on to [his] thigh with [his teeth] and would not let go." (*Id.* at ¶12.)  According to Miller, "at no time did a police officer ever command [him] to do anything whatsoever" prior to the time that Zando found him and bit him. (*Id.* at ¶13.)

After Miller's encounter with Zando, Miller was taken into custody.  It appears that while Breining played a role in arresting Miller, Rybicki did not. (*See* Rybicki Aff. at ¶7, ECF #10-4, Pg. ID 239.)

4

After Rybicki completed her investigation of the incident at the Lone Star Tavern, she completed an Incident Report and requested that the Jackson County Prosecutor charge Miller with (1) assault with a dangerous weapon (commonly known as felonious assault) and (2) assaulting/resisting a police officer. (*See id.* at ¶8, Pg. ID 240.) The prosecutor thereafter charged Miller with those two offenses.

On November 8, 2012, Miller appeared for his preliminary examination before Judge Darryl Mazur ("Judge Mazur") of the Twelfth District Court for the State of Michigan. (*See* Preliminary Exam Transcript, ECF #10-2.) Two civilian witnesses to the altercation testified against Miller; neither Rybicki nor Breining testified. (*See id.*) At the conclusion of the preliminary examination, Judge Mazur found probable cause to believe that Miller had committed felonious assault, and he bound Miller over for trial on that charge. (*See id.* at 47-48, Pg. ID 235.) The prosecutor offered no evidence on the assaulting/resisting an officer charge, and Judge Mazur did not bind Miller over for trial on that charge. (*See id.* at 48.) Later, in the Jackson County Circuit Court, the prosecutor moved to dismiss the felonious assault charge without prejudice because she was not able to make contact with the victim. (*See* Nolle Prosequi Motion, ECF #10-9 at 2, Pg. ID 258.)

## PROCEDURAL HISTORY

On August 21, 2015, Miller filed his Complaint in this action. (*See* ECF #1.) Miller asserts claims against the Jackson County Defendants (Rybicki, Breining,

5

the Sheriff's Office, and Jackson County), Jacobson, Blackman Charter Township, and the Blackman Township Police Department.  The counts in the Complaint are mis-numbered – it starts with Count "II" – and Miller has apparently lumped several claims in some of the individual counts.   The Court views the Complaint as asserting against Rybicki and Breining the following constitutional claims: arrest without probable cause; malicious prosecution without probable cause; excessive force; and violation of due process.  (*See* ECF #1 at 4-6, Pg. ID 4-6.) The Complaint also asserts a claim against the Sheriff's Office, Blackman Charter Township, and Jackson County for implementing unlawful customs and practices that led to the alleged constitutional violations and for failing to train Breining and Rybicki. (*See id.* at 6-8, Pg. ID 6-8.)

On October 26, 2015, the Jackson County Defendants filed the Motion, asking the Court to dismiss the Complaint or, in the alternative, to grant them summary judgment. (*See* ECF #10.)  They attached to the Motion the transcript of Miller's preliminary examination and affidavits from Rybicki and Breining.  (*See* ECF ## 10-2, 10-4, and 10-5.)

Miller timely responded to the Motion on November 15, 2015. (*See* ECF #12.)  Miller attached his own affidavit to his response.  (*See* ECF #12-1.)  Miller did not argue at that time that the request for summary judgment was premature, nor did he contend that he needed to conduct discovery in order to respond to the

6

Motion.  Likewise, Miller did not attach to his response an affidavit pursuant to Rule 56(d) of the Federal Rules of Civil Procedure identifying any discovery that needed to be completed prior to a ruling on the Motion.

The Court held a hearing on the Motion on January 14, 2016.  During the hearing, the Court expressed concern that the record was not sufficiently developed to warrant entry of summary judgment.  The Court requested supplemental briefing and allowed the parties to supplement the record.  The Jackson County Defendants then filed a supplemental brief and submitted the in-car video/audio for the first time.  (*See* ECF ## 16, 17.)  Miller thereafter filed his own supplemental brief (*see* ECF #18), and Miller's counsel submitted a Rule 56(d) affidavit identifying certain discovery that she says should be completed before entry of summary judgment.  (*See* ECF #19.)

## **GOVERNING LEGAL STANDARD**

Rule 12(b)(6) provides for dismissal of a complaint when a plaintiff fails to state a claim upon which relief can be granted.  *See* Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  A claim is facially plausible when a plaintiff pleads factual content that permits a court to reasonably infer that the

defendant is liable for the alleged misconduct. *Id.* (citing *Twombly*, 550 U.S. at 556). When assessing the sufficiency of a plaintiff's claim, a district court must accept all of a complaint's factual allegations as true. *See Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 512 (6th Cir. 2001). "Mere conclusions," however, "are not entitled to the assumption of truth. While legal conclusions can provide the complaint's framework, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 664. A plaintiff must therefore provide "more than labels and conclusions," or "a formulaic recitation of the elements of a cause of action" to survive a motion to dismiss. *Twombly*, 550 U.S. at 556. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

A movant is entitled to summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure when it "shows that there is no genuine dispute as to any material fact...." *U.S. SEC v. Sierra Brokerage Services, Inc.,* 712 F.3d 321, 326–27 (6th Cir. 2013) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, (1986)) (quotations omitted). When reviewing the record, "the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Id.* "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]." *Anderson,* 477 U.S. at 252. However, summary judgment is not appropriate when

"the evidence presents a sufficient disagreement to require submission to a jury." *Id.* at 251-252. Indeed, "[c]redibility determinations, the weighing of the evidence, and the drafting of legitimate inferences from the facts are jury functions, not those of a judge…" *Id.* at 255.

**ANALYSIS**

## I.      The Arrest Without Probable Cause Claim

Miller alleges that Rybicki and Breining violated his constitutional rights when they arrested him without probable cause. (*See* Compl., ECF #1, at ¶28.) In order to prevail on this claim, Miller would have to prove that there was no probable cause for his arrest. *See, e.g.*, *Voyticky v. Village of Timberlake, Ohio*, 412 F.3d 669, 675-677 (6th Cir. 2005) (holding that plaintiff could not support false arrest claim under federal law because plaintiff had failed to establish that the defendants "lacked probable cause" to arrest him).

The Jackson County Defendants have submitted substantial evidence that there *was* probable cause to arrest Miller. The strongest such evidence is the in-car audio/video. (*See* ECF ## 16-1, 17.) As described above, that recording clearly shows that before Miller was arrested, Rybicki (a) had been informed that Miller attempted to commit an assault with a broken glass and (b) had relayed that information to Breining. The accusations against Miller were plainly sufficient to establish probable cause to arrest him for assault. And it appears highly likely that

9

the Court will ultimately enter summary judgment against Miller on his claim that

his arrest was not supported by probable cause.

But at this very early stage in the case – before any discovery has been

conducted – summary judgment on this claim is premature.  Miller's attorney

states in her Rule 56(d) affidavit that she does not have any recordings made by

Breining on the night in question, and she has not had an opportunity to depose

Breining or Rybicki.  (*See* Ina O'Briant Affidavit at ¶3, ECF #19, Pg. ID 369-370.)

It is at least possible – though seemingly highly unlikely – that a recording or

deposition could bring to light evidence that would undermine the existence of

probable cause.  For instance, a recording or deposition could theoretically reveal

that Breining was told something by a witness prior to Rybicki's arrival that would

have undercut the probable cause the officers may have had to arrest Miller.[2]

Because it is at least possible that Miller could develop evidence to create a

material factual dispute as to whether there was probable cause to arrest him,[3] the

---

[2] If, for instance, a recording or deposition revealed that before Rybicki arrived all of the witnesses told Breining that Miller had not done anything wrong and that when the next law enforcement officer arrived they were going to tell a coordinated story falsely implicating Miller, then the probable cause analysis would be quite different.

[3] This is not case like *Scott v. Harris*, 127 S.Ct. 1769 (2007), where the *entire* relevant series of events is captured on video.  If the record contained a recording made by Breining that captured his entire time on the scene, then the Court would have had a recording of all possibly relevant events and may have been in a position to grant summary judgment.

10

Court will **DENY WITHOUT PREJUDICE** the motion for summary judgment with respect to Miller's arrest-without-probable-cause claim. Rybicki and Breining may file a second summary judgment motion on this claim following the close of discovery.

## II.     The Malicious Prosecution Claim

In order to prevail on his malicious prosecution claim, Miller would have to establish, among other things, that there was no probable cause for the charges against him. *See, e.g.*, *Johnson v. Mosely*, 790 F.3d 649, 654 (6th Cir. 2015).   But Miller is collaterally estopped from making that showing with respect to the felonious assault charge.   As this Court has explained, where "the state affords an opportunity for an accused to contest probable cause at a preliminary hearing and the accused does so, a finding of probable cause by the examining magistrate or state judge should foreclose relitigation of that finding in a subsequent 1983 action*." Ghaith v. Rauschenberger*, 778 F. Supp. 2d 787, 803 (E.D. Mich. 2011), *aff'd on other grounds*, 493 Fed. App'x 731 (6th Cir. 2012); *see also Coogan v. City of Wixom*, 820 F.2d 170, 175 (6th Cir. 1987) (Section 1983 plaintiff estopped from establishing lack of probable cause where state court previously held in criminal proceedings that probable caused existed), *overruled on other grounds by*

*Frantz v. Vill. of Bradford*, 245 F.3d 869, 874 (6th Cir. 2001).[4]  Here, Judge Mazur

found probable cause to support the felonious assault charge, and that finding

collaterally estops Miller in this action from establishing a lack of probable cause

with respect to that charge.  Thus, the Jackson County Defendants are entitled to

summary judgment on the malicious prosecution claim to the extent that it rests on

the felonious assault charge.

The Jackson County Defendants are likewise entitled to summary judgment

on the malicious prosecution claim to the extent that it rests on the resisting and

obstructing charge.  Miller has not shown that the resisting and obstructing charge

led to a deprivation of liberty apart from his initial arrest. *See Johnson v. Mosely*,

790 F.3d 649, 654 (6th Cir. 2015) (stating that essential element of malicious

prosecution claim under 42 U.S.C. § 1983 is deprivation of liberty apart from

initial seizure).  Miller argues that as a result of the resisting and obstructing

charge, he had to post a bond after his arrest and had to comply with restrictive

bond conditions while the charge was pending. (*See* Miller Supp. Br., ECF #18 at

---

[4] A state-court finding of probable cause may lack preclusive effect in a Section
1983 action for false arrest and/or malicious prosecution where the arresting officer
supplied false information to the state court. *See, e.g.*, *Hinchman v. Moore*, 312
F.3d 198, 202 (6th Cir. 2002).  But that rule is of no help to Miller here because
neither Rybicki nor Breining testified at the preliminary examination before Judge
Mazur. (*See* ECF #10-2.)  The sole witnesses as the exam were the private citizens
who saw and/or participated in the altercation. (*See id.*)  Miller insists that those
witnesses testified falsely at the preliminary, and he argues that the probable cause
finding thus should not be given preclusive effect. (*See* Miller Br., ECF #12 at 12,
Pg. ID 278.)  But Miller cites no authority to support that argument.  (*See id.*)

7-8, Pg. ID 357-58.)    But the requirement to post bond and comply with bond conditions did not result from the resisting and obstructing charge *alone*.  On the contrary, Miller's need to post bond and comply with the bond conditions also arose from the felonious assault charge that had been filed against him – a charge that *was* supported by probable cause.  Thus, Miller would have had to post bond and comply with the bond conditions even if the resisting and obstructing charge had never been filed against him.  And Miller has not shown – nor has he suggested that he could show – that the addition of resisting and obstructing charge increased the amount of his bond or enhanced the severity of the bond conditions imposed upon him.  Simply put, even if the resisting and obstructing charge had been maliciously filed, Miller has failed to provide any basis to conclude that that charge had any independent impact on Miller's liberty or that it resulted in a deprivation of liberty apart from his initial arrest.  Accordingly, the Jackson County Defendants are entitled to summary judgment on Miller's malicious prosecution claim.[5]

_____

[5] Miller also argues that the filing of the resisting and obstruction charge interfered with his property rights because he was forced to hire a lawyer and defend against the charges.  But Miller does not cite any authority for the proposition that a malicious prosecution claim may lie for interference with property rights as opposed to interference with personal liberty.  In any event, Miller has not shown – nor attempted to show – that his legal fees were any higher as a result of the resisting and obstructing charge.  Even without that charge, Miller would still have had to hire a lawyer to defend him against the felonious assault charge, and there is no indication that the scope of the attorney's work was broader due to the addition

### III.    The Excessive Force Claim Against Rybicki and Breining

Miller alleges that Rybicki and Breining used excessive force when they arrested him.  More specifically, Miller seeks to hold Rybicki and Breining liable for the force applied when Jacobson's police dog Zando bit him immediately prior to and during his arrest.  Rybicki cannot be held liable for Zando's actions because it is undisputed that she was not present when Zando allegedly bit Miller.  Breining may well ultimately be entitled to summary judgment on the excessive force claim as well, but because Breining was present when Miller was allegedly bitten, Miller has a right to take discovery on this claim against Breining before entry of summary judgment.

As Miller acknowledges, Rybicki and Breining may be held liable only for their "own individual actions" – acts they "committed personally."  (Miller Br., ECF #12 at 20-21, Pg. ID 286-87, quoting *Robertson v. Lucas*, 753 F.3d 606, 615 (6th Cir. 2014).)  This rule is fatal to Miller's excessive force claim against Rybicki because she did not "personally" cause Zando to use force against Miller. The recording from Rybicki's in-car system conclusively establishes that she was not even present when Zando tracked and ultimately bit Miller and that she never had any personal control over Zando prior to the tracking of Miller. (*See also*

---

of the resisting and obstructing charge.  Both charges grew out of the same discrete incident, and any competent attorney would have had to investigate the entire short incident in order to defend Miller even if the resisting and obstructing charge was never brought against him.

Rybicki Aff. at ¶¶5-6, ECF #10-4, Pg. ID 239.) Simply put, the undisputed and irrefutable evidence establishes that Rybicki was never in a position to control or direct Zando or otherwise prevent Zando from biting Miller.

The "personal involvement" rule may also eventually doom Miller's excessive force claim against Breining. Breining has submitted an affidavit stating that he followed along as Zando and Jacobson tracked Miller, but that Breining did not have any control over Zando. Breining notes that Jacobson (rather than (Breining himself), was Zando's handler and was giving commands to Zando, and Breining swears under oath that he did not even see Zando use force against – i.e., bite – Miller. (*See Breining* Aff. at ¶¶ 10-11, ECF #10-5, Pg. ID 244.) But Miller has not yet had an opportunity to test Breining's version of events through cross-examination at a deposition and by deposing PSO Jacobson. Because Miller could at least in theory develop evidence contradicting Breining's version of his connection to, and control over, Zando, Breining is not yet entitled to summary judgment on the excessive force claim.

## IV.    The Due Process Claim Against Rybicki and Breining

Miller alleges that Rybicki and Breining violated his due process rights by arresting him without probable cause, by maliciously causing his prosecution, and by using excessive force in connection with his arrest. (*See* Compl., ECF #1 at ¶34.) The Fourth Amendment protects against this type of alleged misconduct.

*See, e.g.*, *Sykes v. Anderson*, 625 F.3d 294, 308 (6th Cir. 2010) ("The Sixth Circuit recognizes a [] constitutionally cognizable claim of malicious prosecution under the Fourth Amendment which encompasses wrongful investigation, prosecution, conviction, and incarceration" (internal punctuation omitted)); *Phelps v. Coy*, 286 F.3d 295, 295 (6th Cir. 2002) ("If the plaintiff was a free person at the time of the incident and the use of force occurred in the course of an arrest or other seizure of the plaintiff, the plaintiff's [excessive force] claim arises under the Fourth Amendment"); *Voyticky*, 412 F.3d at 678 ("The Fourth Amendment to the United States Constitution prohibits searches and seizures absent probable cause or a warrant based on probable cause"). For that reason, Miller may not assert a due process claim based upon this purported conduct by Rybicki and Breining. Indeed, it is well-settled that where a particular constitutional amendment "provides an explicit textual source of constitutional protection" against the government misconduct alleged by a plaintiff, "that Amendment, not the more generalized notion of 'substantive due process, must be the guide for analyzing" the plaintiff's claim. *Graham v. Connor*, 490 U.S. 386, 395 (1989). Miller's due process claim against Rybicki and Breining therefore fails.

**V.      The Claim Against the Sheriff's Office and Jackson County**

Miller seeks to hold the Sheriff's Office and Jackson County liable on two grounds: that they failed to train Rybicki and Breining and/or that they had a policy

or custom that led to Rybicki and Breining violating his constitutional rights. (*See* Compl., ECF #1 at ¶¶ 44, 49.) But Miller has not pleaded any specific facts to support his claims against the Sheriff's Office and Jackson County. In particular, Miller has not sufficiently identified any particular failure of training nor any particular policy that led to his injuries. Miller pleads only conclusory generalities in support of his claims against the Sheriff's Office and Jackson County, and that is not enough to state a cognizable claim against these Defendants. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *see also Brown v. Cuyahoga Cty.*, 517 Fed. App'x 431, 436 (6th Cir. 2013) (dismissing municipality liability claim under Rule 12(b)(6) for failure to state a claim).

Miller attempts to save his claim against the Sherriff's Office and Jackson County by arguing that he needs to conduct certain discovery. (*See* O'Briant Aff., ECF #19.) But the Defendants have attacked the sufficiency of Miller's municipal liability claim under Rule 12(b)(6), and a plaintiff cannot defeat such a motion by seeking discovery. And here, for the reasons stated above, the Court finds Miller's allegations – even if they were accepted as true – to be insufficient to state a claim against the Sherriff's Office and Jackson County.

## CONCLUSION

For the reasons stated above, **IT IS HEREBY ORDERED** that the Jackson County Defendants' Motion to Dismiss and/or for Summary Judgment (ECF #10)

is **GRANTED IN PART AND DENIED WITHOUT PREJUDICE IN PART**.

The only claims that remain pending in this case are as follows:

- Miller's claim against Rybicki and Breining that the officers violated his constitutional rights when they arrested him without probable cause.

- Miller's excessive force claim against Breining.

- Miller's claims against Defendants Jacobson, Blackman Charter Township, and the Blackman Township Police Department.

The parties are further ordered to begin discovery on the remaining claims and to meet and confer with respect to whether the Court's November 16, 2015, Case Management Order needs to be amended to provide additional time for the parties to complete this discovery.  (*See* ECF #13.)

      **IT IS SO ORDERED**

                             s/Matthew F. Leitman
                             MATTHEW F. LEITMAN
Dated:  February 16, 2016        UNITED STATES DISTRICT JUDGE

      I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on February 16, 2016, by electronic means and/or ordinary mail.

                             s/Holly A. Monda
                             Case Manager
                             (313) 234-5113